1

2

3

4

5

6                           UNITED STATES DISTRICT COURT
                            WESTERN DISTRICT OF WASHINGTON
7                                     AT TACOMA

8    NEW YORK LIFE INSURANCE CO. a New
     York Mutual Insurance Company,              Case No.  10-5242RJB
9
                   Plaintiff-in-Interpleader,    ORDER GRANTING IN PART
10                                               AND DENYING IN PART
            v.                                   DEFENDANTS-IN-
11                                               INTERPLEADER BUCHNER'S
     ESTATE OF WILLIAM J. BUCHNER;               AND HAMPSHIRE'S MOTIONS
     KATHLEEN BUCHNER; PAMELA                    FOR SUMMARY JUDGMENT
12   BUCHNER HAMPSHIRE; JOSELITO
     CABUNAG; and ASTERIA PARAMBITO
13   BUCHNER,

14                 Defendants-in-Interpleader.

15          This matter comes before the Court on Defendant-in-interpleader Kathleen Buchner

16   (William Buchner's widow) and Estate of William Buchner's (collectively "Buchner") Motion

17   for Summary Judgment (Dkt. 33) and Defendant-in-interpleader Pamela Hampshire's Cross

18   Motion for Summary Judgment (Dkt. 35).  The Court has considered the motion, responses, and

19   relevant documents herein.

20                     I.  FACTUAL AND PROCEDURAL BACKGROUND

21          This interpleader action involves competing claims to the proceeds of two group

22   membership life insurance policies taken out by the late William Buchner.  Dkt. 2; Dkt. 35, p. 1;

23   Dkt. 40, p. 2.

24

On June 1, 1994, New York Life Insurance Co. ("NY Life") issued a certificate of insurance for $20,000 of level term life insurance to William Buchner under policy number G-05393. Dkt. 2, ¶ 12; Dkt. 35, p. 1, Dkt. 40, p. 2. On September 1, 1985, NY Life issued $20,000 of decreasing term insurance to William Buchner under the same policy number. Dkt. 2, ¶ 12. The total face value of insurance issued to William Buchner under policy number G-05393 was $40,000. Dkt. 2, ¶ 12. William Buchner named his sister, Pamela Buchner Hampshire[1] and his purported step-son, Joselito Cabunag, as co-beneficiaries with equal shares of the proceeds under policy G-05393. Dkt. 2, ¶ 13. At the time William Buchner purchased the policy, William Buchner was married to Kathleen Buchner. The policy was purchased with community funds of the William/Kathleen Buchner marriage.

On or about September 12, 2000, NY Life issued a certificate of insurance for $56,408 of 15-year level term insurance to William Buchner under policy number G-11008-0. Dkt. 2, ¶ 14. William Buchner named Asteria Parambita Buchner ("Ms. Parambita"), as the primary beneficiary and Pamela Hampshire as secondary beneficiary under policy number G-11008-0. Dkt. 2, ¶ 15; Dkt. 35, p.1-2. This policy also was purchased with community funds of the William/Kathleen Buchner marriage.

On August 20, 2009, William Buchner died. Dkt. 35, p. 2. On or about October 19, 2009, Pamela Hampshire submitted her claim to NY Life for her share of the insurance proceeds from insurance policy G-05393. *Id*.; Dkt. 36, p. 19. NY Life processed a payment to Pamela Hampshire in the amount of $20,297.38. *Id*. On December 18, 2009, Kathleen Buchner contacted NY Life and made a claim for all of William Buchner's life insurance proceeds. Dkt. 35, p. 2.

---

[1] Pamela Buchner Hampshire is identified in the record by various names; Pamela Hampshire, Pamela J. Buchner, and Pamela Buchner Hampshire. The Court will refer to Pamela Buchner Hampshire as "Ms. Hampshire" or "Pamela Hampshire" to reduce confusion.

On April 8, 2010, NY Life initiated this interpleader action against the Defendants-in-interpleader. Dkt. 40, p. 3. On July 23, 2010, NY Life moved for an order directing the Clerk of the Court to deposit into the court registry $78,641.00, the remaining policy proceeds under the life insurance policies issued to William Buchner. Dkt. 40, p. 4. NY Life also moved the Court for an award of attorneys' fees and costs on the basis that NY Life had satisfied its obligations under the life insurance policies. *Id*. On August 25, 2010, the Court granted NY Life's motion for leave to deposit the interpleaded funds. Dkt. 17. On September, NY Life filed a Motion to Dismiss and for Attorney Fees and Costs. Dkt. 40, p. 4. On September 29, 2010, the Court issued an Order Requesting Information regarding NY Life's request for attorney fees and costs. *Id*. On October 13, 2010, the Court granted NY Life's Motion to Dismiss, dismissed NY Life from this matter, and granted attorneys' fees and costs. *Id*.

On November 4, 2010, Kathleen Buchner filed this motion for summary judgment. Dkt. 33. Ms. Buchner requests the following: (1) Dismissal of all Defendant-in-interpleader Pamela Hampshire's claims to any of the funds now held in the Court Registry; (2) Disgorgement of all insurance proceeds already distributed to Ms. Hampshire by New York Life Insurance Co.; (3) A finding that New York Life Insurance Co. was directly at fault for the erroneous distribution of proceeds to Ms. Hampshire; (4) Disgorgement of any and all fees and costs already distributed by New York Life and remitted to Ms. Buchner; (5) Dismissal of Defendant-in-interpleader Joselito Cabunag's claims to any of the funds; and (6) Reimbursement for reasonable attorney fees and costs. Dkt. 33, p. 9.

On November 29, 2010, Ms. Hampshire filed a cross-motion for summary judgment. Dkt. 35.

ORDER - 3

1

## II. DISCUSSION

2      Summary judgment is proper only if the pleadings, the discovery and disclosure materials

3 on file, and any affidavits show that there is no genuine issue as to any material fact and that the

4 movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is

5 entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

6 showing on an essential element of a claim in the case on which the nonmoving party has the

7 burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

8 of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

9 for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

10 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

11 metaphysical doubt.").  *See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a

12 material fact exists if there is sufficient evidence supporting the claimed factual dispute,

13 requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty*

14 *Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

15 *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

16      The determination of the existence of a material fact is often a close question.  The court

17 must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

18 e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, *T.W. Elect.*

19 *Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

20 of the nonmoving party only when the facts specifically attested by that party contradict facts

21 specifically attested by the moving party.  The nonmoving party may not merely state that it will

22 discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

23 to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

24

ORDER - 4

1   Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

2   be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

3        "The task of a federal court in a diversity action is to approximate state law as closely as

4   possible in order to make sure that the vindication of the state right is without discrimination

5   because of the federal forum." *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980).  Where

6   the state's highest appellate court has not spoken on an issue, the federal court's role is to predict

7   what decision the state's highest court would reach.  *See Evanston Ins. Co. v. OEA, Inc.*, 566

8   F.3d 915, 921 (9th Cir. 2009).  A federal court uses "intermediate appellate court decisions,

9   decisions from other jurisdictions, statutes, treatises, and restatements as guidance" to predict

10  how the state's highest court would rule. *Assurance Co. of Am. v. Wall & Assocs. LLC of

11  Olympia*, 370 F.3d 557, 560 (9th Cir. 2004).  A federal court will follow the decisions of state

12  intermediate appellate courts unless there is "convincing evidence" that the state's highest court

13  would decide the issue differently. *Id*.  Washington State law applies here.

14  **A. Insurance Policy G-05393**

15       Ms. Hampshire and Mr. Cabunag are named co-beneficiaries to insurance policy G-

16  05393.  The face value of the insurance policy is $40,000.00.

17       Ms. Buchner asserts that the entire proceeds from both insurance policies should be

18  distributed to her because polygamy and bigamy are federal and state crimes.  Dkt. 33, p. 4.  Ms.

19  Buchner asserts that Ms. Hampshire is an accomplice to her brother William Buchner's

20  bigamous acts and cannot obtain the proceeds of the insurance policy.  Dkt. 33, p. 3-6.  Ms.

21  Buchner's argument is irrelevant and without merit.  There is no evidence that William Buchner

22  or anyone else in this case has been charged or convicted of the crime of polygamy or bigamy.

23  Moreover, it is inappropriate for the Court to resolve criminal liability as part of a civil

24

1    proceeding.  Ms. Buchner's legal argument has no basis in law or fact   The Court should not

2    entertain any arguments related to the alleged criminal activity.

3         Ms. Buchner next argues that the entire proceeds of an insurance policy should be

4    distributed to her because the insurance policy was purchased with community property.  Dkt.

5    33, p. 7.  Ms. Hampshire asserts that she is entitled to at least one-half of the insurance proceeds,

6    as a designated beneficiary, because Washington state law provides that a spouse is entitled to

7    disburse half of community property as the spouse wishes.  Dkt. 35, p. 4-5.  Ms. Buchner

8    concedes in her reply that a spouse may disburse his half of community property as he chooses,

9    but argues that Washington State's slayer statute prohibits such distribution here.  Dkt. 44, p. 1-2.

10        Joselito Cabunag has appeared in this case and is proceeding *pro se*.  Mr. Cabunag has

11   filed two documents in this case which the Court will consider as opposition to Ms. Buchner's

12   motion for summary judgment.  See Dkts. 30, 45.  It appears that Mr. Cabunag is opposing Ms.

13   Buchner's claim for 100% of the insurance proceeds and is claiming that he is a 50% beneficiary

14   of the G-05393 insurance policy.  Dkt 45, p. 3.

15        A surviving spouse has a community property interest in a life insurance policy only to

16   the extent community funds were used to purchase the policy.  *Aetna Life Ins. Co. v. Bunt*, 110

17   Wash.2d 368, 371 (1988).  It is not contested that the insurance policy was purchased with

18   community funds.

19        If a term policy is community property and the surviving spouse is not a named

20   beneficiary, the surviving spouse is entitled to one-half of the proceeds.  *Francis v. Francis*, 89

21   Wash.2d 511, 515 (1978).  Ms. Buchner has conceded that this is the controlling law in this case,

22   but asserts that Washington State's slayer statute prevents disbursement of the other half of the

23   proceeds to Ms. Hampshire.  Dkt. 44, p. 1-2.  Ms. Buchner has not asserted that Mr. Cabunag is

24

1    prevented from receiving his portion of the proceeds due to the slayer statute.

2         Washington State's slayer statute states that a "slayer or abuser shall be deemed to have

3    predeceased the decedent as to property which would have passed from the decedent… to the

4    slayer or abuser…."  RCW 11.84.030.  Ms. Buchner asserts that Ms. Hampshire was an "abuser"

5    because she was an accomplice to bigamy.  Dkt. 44, p. 3.  An "abuser" is defined as "any person

6    who participates, either as a principal or an accessory before the fact, in the willful and unlawful

7    financial exploitation of a vulnerable adult."  RCW 11.84.010 (1).  "Financial exploitation"

8    means the "illegal or improper use of the property, income, resources, or trust funds of the

9    vulnerable adult by any person for any person's profit or advantage other than for the vulnerable

10   adult's profit or advantage."  RCW 74.34.020(6).  "Vulnerable adult" means a person who is (1)

11   sixty years of age or older who has the functional, mental, or physical inability to care for

12   himself or herself; (2) found incapacitated under chapter 11.88 RCW; (3) who has a

13   developmental disability as defined under RCW 71A.10.020; (4) admitted to any facility; (5)

14   receiving services from home health, hospice, or home care agencies licensed under chapter

15   70.127 RCW; or (6) receiving services from an individual provider.  RCW 74.34.020(16).

16        Ms. Buchner has not alleged or provided evidence that William Buchner is a vulnerable

17   adult as defined by RCW 74.34.020(16), or that anyone was an abuser or slayer as defined in

18   RCW 11.84.  For the foregoing reasons, Ms. Buchner's motion for summary judgment asserting

19   that she is entitled to all the proceeds of William Buchner's life insurance policies should be

20   denied, but should be granted as to the community one-half of the proceeds.

21        Ms. Hampshire asserts that if Mr. Cabunag does not respond to Ms. Buchner's motion,

22   then she is entitled to the remaining half of the insurance proceeds.  Dkt. 35, p. 5.  As noted

23   above, Mr. Cabunag has appeared in this case and has submitted opposition.  Ms. Hampshire's

24

1  motion for summary judgment regarding Cabunag's portion of insurance policy G-05393 should

2  be denied.

3       Ms. Hampshire concedes that she was paid $20,297.38 of the insurance proceeds from

4  insurance policy G-05393.  That appears to be an overpayment.  Ms. Buchner is entitled to 50%

5  of the insurance proceeds related to insurance policy G-05393, and Ms. Hampshire and Mr.

6  Cabunag are each entitled to 25%.

7  **B.  Insurance Policy G-11008-0**

8       Asteria Parambita is named primary beneficiary to insurance policy G-11008-0.  Pamela

9  Hampshire is named secondary beneficiary.  The value of this insurance policy is $56,408.  Dkt.

10  2, ¶ 15.

11      Ms. Buchner makes the same arguments regarding insurance policy G-11008-0 that she

12  made in reference to Policy G-05393.  Ms. Buchner's argument regarding criminal liability is

13  irrelevant and without merit.  The controlling law in Washington allows the decedent to dispose

14  of his half of community property as he wishes.  Washington's slayer/abuser statute does not

15  apply in this case.  Ms. Buchner is only entitled to the community half of the insurance proceeds

16  from insurance policy G-11008-0.   Ms. Buchner's motion for summary judgment should be

17  granted to that extent, but otherwise denied.

18      Ms. Hampshire asserts that she is entitled to half of the insurance proceeds from

19  insurance policy G-11008-0 because Ms. Parambita has not appeared in this matter, Ms.

20  Parambita has made no claim for any share of the proceeds in this action, and Ms. Hampshire is

21  the secondary beneficiary. Dkt. 35, p. 5-6.  While Ms. Hampshire asserts that Ms. Parambita has

22  not made a claim for the insurance proceeds, there is no evidence presented to show that Ms.

23  Parambita does not claim her share of the proceeds.  Parambita has not appeared in this case and

24

1   appears to live in Saipan, Northern Mariana Islands.  Dkt. 2, ¶ 6.  It is uncertain at this point

2   whether Ms. Parambita desires to make a claim on the insurance proceeds.  Given the

3   circumstances, Ms. Parambita should be given opportunity to make a claim before granting of

4   summary judgment in Ms. Hampshire's favor.

5          Ms. Hampshire also asserts that she is entitled to all the proceeds from insurance policy

6   G-11008-0 because Washington law, RCW 48.18.440(2), creates a legal presumption that when

7   a spouse designates a sibling as a beneficiary it is with the consent of the other spouse and not

8   subject to attack.  Dkt. 35, p. 6.  Ms. Buchner responds by asserting that neither William Buchner

9   nor Ms. Hampshire ever had the consent of Ms. Buchner to the designation of Ms. Hampshire as

10   a beneficiary.  Dkt. 44, p. 2.

11          RCW 48.18.440(2) states:

12       In any life insurance policy… issued upon the life of a spouse the designation…
        made by such spouse of a beneficiary… shall create a presumption that such
13       beneficiary was so designated with the consent of the other spouse, but only as to
        any beneficiary who is the child, parent, brother, or sister of either of the spouses.
14

15   While Washington law creates a presumption of consent, the presumption is rebuttable.  *Francis*

16   *v. Francis*, 89 Wash.2d 511, 518 n.5 (1978).  Ms. Buchner states that the insurance policies

17   naming Ms. Hampshire as beneficiary were undisclosed.  Dkt. 33-1, p. 3.  Ms. Buchner contends

18   that after she discovered the undisclosed life insurance policies, she contested the designations of

19   beneficiaries with NY Life.  *Id*.  That is enough to rebut the statutory presumption of consent.

20   Ms. Hampshire's motion for summary judgment, asserting that she is entitled to all the proceeds

21   of Policy G-11008-0, should be denied.

22          In summary, Ms. Buchner and Ms. Parambita are each entitled to half of the proceeds

23   from insurance policy G-11008-0.  Ms. Parambita should be allowed to make a claim, if she so

24   wishes, for the insurance proceeds.  Ms. Parambita should be allowed until April 8, 2011, to

make a claim for the proceeds with this Court.  If Ms. Parambita does not make a claim, then it is

appropriate for the secondary beneficiary, Ms. Hampshire, to receive the funds.  However, Ms.

Hampshire has already received an excessive amount of the insurance proceeds from G-05393.

Any proceeds Ms. Hampshire is entitled to receive from insurance policy G-11008-0 should be

offset by the amount of excessive proceeds already received from insurance policy G-05393.

**C. Miscellaneous Issues Presented By The Parties**

   *1. Kathleen Buchner's Motion for Summary Judgment*

Ms. Buchner requests that the Court direct Ms. Hampshire to disgorge all insurance

proceeds which were disbursed to Ms. Hampshire by NY Life prior to the filing of this action.

Dkt. 33, p. 9.  This is an interpleader action pursuant to 28 U.S.C. §1335, which provides in

relevant part, that when two or more adverse claimants "are claiming… to be entitled to… one or

more of the benefits arising by virtue of any… policy… and the plaintiff has deposited such

money… into the registry of the court, there to abide the judgment of the court …."  The Court's

jurisdiction extends only to those funds at issue and deposited in the Court's registry.  A claim

for funds outside the funds deposited in the court's registry is not cognizable in an interpleader

action.  Moreover, the parties have not provided authority showing that this Court has authority

to direct disgorgement of money already paid prior to the filing of this action.  For the foregoing

reasons, Ms. Buchner's motion for summary judgment requesting disgorgement of funds by Ns.

Hampshire should be denied.

Ms. Buchner next requests that the Court find that NY Life was directly at fault for the

erroneous distribution of proceeds to Ms. Hampshire and that the Court order NY Life to

disgorge all attorney's fees and costs distributed to NY Life by the Clerk of the Court.  Dkt. 33,

p. 9.  NY Life was dismissed from this case on October 13, 2010.  Dkt. 29.  NY Life, however,

1   submitted a response to Ms. Buchner's motion for summary judgment arguing that Ms.

2   Buchner's motion is procedurally deficient and that she had the opportunity to object to NY

3   Life's motion to dismiss and for attorney's fees and costs but chose not to do so.  Dkt. 40, p. 5-6.

4   Ms. Buchner does not respond to NY Life's arguments.  Dkt. 44.  Ms. Buchner has had several

5   opportunities to make her claims against NY Life, but she did not make any claims until after

6   NY Life was dismissed from the case.  See Dkt. 40, p. 3-6.  Any claims now made against NY

7   Life in this case are unavailing.  For the foregoing reasons, Ms. Buchner's motion for summary

8   judgment regarding NY Life should be denied.

9        Finally, Ms. Buchner requests that the Court grant her attorney's fees and costs.  Dkt. 33,

10  p. 9.  Ms. Buchner has not shown cause or provided authority for the granting of attorney's fees

11  and costs.  Therefore, Ms. Buchner's request for attorney's fees and costs should be denied.

12        *2.  Ms. Hampshire's Motion for Summary Judgment*

13        Ms. Hampshire requests an award of sanctions pursuant to Fed.R.Civ.P. 11 for having to

14  respond to arguments made by Ms. Buchner that are unsupported by fact or law.  Dkt. 35, p. 11.

15  Ms. Hampshire contends that Ms. Buchner's assertions of criminal activity and her reliance on

16  two cases that are not on point are without merit and are unsupported by the facts.  Dkt. 35, p.

17  11-12.

18        Fed.R.Civ.P. 11(b) states that by "presenting to the court a pleading, written motion, or

19  other paper… an attorney… certifies that to the best of the person's knowledge, information, and

20  belief, formed after an inquiry reasonable under the circumstances… the claims, defenses, and

21  other legal contentions are warranted by existing law or by a nonfrivolous argument for

22  extending, modifying, or reversing existing law or for establishing new law, [and] the factual

23  contentions have evidentiary support.."  Fed.R.Civ.P. 11(c)(1) states that notice and reasonable

24

ORDER - 11

1    opportunity to respond should be given before determining if sanctions should be imposed.  The

2    court may impose an appropriate sanction on any attorney that has violated this rule.  *Id.*  "A

3    sanction imposed under this rule must be limited to what suffices to deter repetition of the

4    conduct or comparable conduct by others similarly situated."  Fed.R.Civ.P. 11(c)(4).

5          A motion for sanctions must be made separately from any other motion and must

6    describe the specific conduct that allegedly violates Rule 11(b).  Fed.R.Civ.P.(c)(2).  The motion

7    must be served, but must not be filed if within 21 days after service the challenged paper, claim,

8    defense, contention or denial is withdrawn or appropriately corrected.  *Id*.

9          Ms. Hampshire has not made a separate motion for sanctions pursuant to Rule 11, and

10   has not shown that she served the motion 21 days prior to filing the motion in accordance with

11   Rule 11.  Therefore, Hampshire's motion regarding sanctions should be denied.

12         *3. NY Life's Motion to Strike*

13         NY Life filed a motion to strike paragraphs 3 through 9 of Ms. Buchner's declaration

14   because it lacks foundation, is not relevant, is not based on personal knowledge, and contains

15   inadmissible legal conclusions, speculation and hearsay.  Dkt. 40, p. 9.

16         The Court will consider Ms. Buchner's statements and will give her statements their due

17   weight according to the Federal Rules of Evidence and the Federal Rules of Civil Procedure.

18   NY Life's motion to strike should be denied.

19   **D.  Distribution of Funds in Court's Registry**

20         In summary, Kathleen Buchner is entitled to half of the insurance proceeds from

21   insurance policies G-05393 and G-11008-0.  Pamela Hampshire and Joselito Cabunag are

22   entitled to the remaining half of the proceeds from insurance policy G-05393.  Asteria Parambita

23   is entitled to the remaining half of the proceeds from insurance policy G-11008-0, but must make

24

ORDER - 12

1    a claim with the Court by April 8, 2011.  If Ms. Parambita fails to make a claim, then Ms.

2    Hampshire is entitled to the remaining half of the proceeds from insurance policy G-11008-0,

3    subject to any offset for excessive proceeds already paid under policy G-05393.

4         The Court should not direct distribution of funds in the Court's registry until Ms.

5    Parambita has had opportunity to make a claim.  Whether Ms. Parambita makes a claim by April

6    8, 2011, or fails to make a claim by that date, the Court will issue an order directing distribution

7    in the appropriate amounts consistent with this order, and dismissing the case.

8                                           **III. ORDER**

9         The Court does hereby find and **ORDER**:

10            (1)     Defendant-in-interpleader Buchner's Motion for Summary Judgment (Dkt. 33) is

11                     **GRANTED IN PART AND DENIED IN PART** as set forth above;

12            (2)     Defendant-in-interpleader Hampshire's Cross Motion for Summary Judgment

13                     (Dkt. 35) is **GRANTED IN PART AND DENIED IN PART** as set forth above;

14            (3)      Plaintiff-in-interpleader New York Life Insurance Company's Motion to Strike

15                     (Dkt. 40) is **DENIED**;

16            (4)     **Asteria Parambita** may make a claim for insurance proceeds by filing a

17                     statement of claim with this Court **no later than April 8, 2011**;

18            (5)     All parties are directed to FORTHWITH provide the court will the address of

19                     Asteria Parambita if they have it, so that the court can provide notice to her;

20            (6)     In light of this order the Pretrial Conference set for February 4, 2011, and the trial

21                     set for February 14, 2011, is **CANCELLED**; and

22            (7)     The Clerk is directed to send copies of this Order to all counsel of record and any

23                     party appearing *pro se* at said party's last known address.

24

1    DATED this 3rd day of February, 2011.

2

3

4                              ROBERT J. BRYAN
                               United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER - 14